## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION

| | |
|---|---|
| **EDIE HALL,** | |
| **Plaintiff,** | **CIVIL ACTION NO.** |
| **v.** | |
| **UNITED AIRLINES, INC.,** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

1.     EDIE HALL ("Plaintiff" or "HALL"), brings this action against UNITED AIRLINES, INC. ("UNITED" or "Defendant") under Title I of the Americans with Disabilities Act, as amended ("ADAAA"), as a result of UNITED'S discriminatory and retaliatory conduct against HALL as reflected below.

### I.       INTRODUCTION

2.     HALL is a flight attendant.  She has suffered severe foot problems (as more fully described below) for more than fifteen (15) years.  In 2004, after many failed attempts to treat her condition using steroid injections, orthotics, and other treatment modalities, her treating doctor recommended that she wear a specific type of shoe, the Dansko XP Pro clog, in order to provide the support she required to perform her day to day work activities.  He wrote her a "doctor's note" to use the clog which HALL gave to her then employer (Continental Airlines) and from 2004 until approximately August 2013, HALL wore the Dansko XP Pro clog to work without incident or concern.[1]  The clog was her solution.

3.     In May 2013, however, HALL had a rather major surgery on her feet (for the third time) which required her to be off from work for a few months in order to recover.  When she

---

[1] In 2010, Continental Airlines merged with United Airlines.

returned in October 2013, she was told by her supervisor, Melinda Davis, that she would not be permitted to wear the Dansko XP clog that she had been permitted to wear the previous nine (9) years, but rather she would have to go through UNITED's Reasonable Accommodation Process (RAP) before she could return to work.

4.     HALL complied with the requirements of the RAP protocol and provided written medical certification from her treating physician of her permanent medical disability and request to use the Dansko XP Pro clog as a reasonable accommodation.  To her surprise, UNITED refused the accommodation, claiming first that her physician had to describe the characteristics of the shoe, rather than recommend a specific brand/model. So HALL complied, went back to the doctor and obtained another note describing the characteristics of the shoe.  But again, UNITED did not permit HALL to use the Dansko Pro XP clog.  Rather, UNITED said that the shoe had to meet certain qualities and characteristics.  HALL continued to search for a shoe that would meet with UNITED'S standards, but in the end failed.  She even purchased and tried a few different brands/models, but they hurt her feet.  She could not wear them.   In the end, UNITED refused HALL'S accommodation request multiple times purportedly because the clog does not comply with UNITED'S Uniform Policy.

5.     HALL has been discriminated against by UNITED regarding the terms and conditions of her employment because of her medical condition and because she requested, but was refused, a legally protected reasonable accommodation, in violation of the Americans with Disabilities Act of 1990, as amended  ("ADAAA").

6.     This action seeks equitable relief, compensatory and punitive damages, liquidated damages, expert witness fees, court costs, attorney's fees, pre-judgment and post-judgment interest, and all other damages permitted at law or in equity.

## II.     PARTIES

7.     Plaintiff, EDIE HALL, is a resident of Montgomery County, Texas.  At all pertinent times, she was a resident of Montgomery County, Texas.

8.     Defendant, UNITED AIRLINES, INC., is a Delaware corporation duly authorized and qualified to do business in the State of Texas.  Defendant may be served with citation by serving its registered agent for service, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

## III.     JURISDICTION AND VENUE

9.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1331 because this is a civil action arising under federal law, i.e. the Americans with Disabilities Act of 1990, as Amended (ADAAA)[2].

10.     UNITED has significant contacts within this district, HALL resides within this district, and the events that give rise to this cause of action occurred (primarily) in this district. Consequently, venue in this judicial district is proper pursuant to 28 U.S.C.A. § 1391.

11.     This Court has jurisdiction over all claims in this action. The amount in controversy is within the jurisdictional limits of this Court.

## IV.     PROCEDURAL REQUISITES

12.     All conditions precedent to the filing of this action have been complied with by Plaintiff.  Specifically, on or about November 7, 2013, HALL filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Houston, Texas.   The Charge was filed within three hundred (300) days after the occurrence of one or more of the unlawful employment practices alleged herein. On or about August 8, 2017, the EEOC issued HALL a Notice of Right to Sue letter.  HALL filed this lawsuit within ninety (90) days after the date on which she received the Notice of Right to Sue letter.

---

[2] 42 U.S.C. § 12101 et. seq.

13. Consequently, all jurisdictional prerequisites to the institution of this lawsuit have been fulfilled, and HALL has exhausted her administrative remedies as required by law.

## V.   STATEMENT OF FACTS

14.   Plaintiff, EDIE HALL, is sixty (60) years old.  She has been employed as a flight attendant for United Airlines (and its predecessor, Continental Airlines) for more than thirty-two (32) years, since 1985.[3]

15.   Mrs. Hall suffers from severe foot malformations, problems and pain. Of course, her duties as a flight attendant require her to be on her feet for prolonged periods of time.  As a result, beginning in 2004, HALL'S treating physician recommended that she wear a special type of shoe to help provide greater support in the mid- and front-sole areas of her feet.  Specifically, HALL'S treating physician recommended that she use the Dansko Pro XP Clog.  As stated above, from 2004 until approximately August 2013, HALL wore the Dansko Pro XP Clog as part of her daily wardrobe – including during all of the time that she worked as a flight attendant, without incident or problems.

16.   There are four (4) phases of flight.  Phase 1 is the time from when the flight attendant arrives to the airport until she boards the plane.  Phase 2 is the time from takeoff through the end of meal service.  Phase 3 is the time after meal service until initial descent.  Phase 4 is the time from when the plane lands until the flight attendant leaves the airport.

17.   Continental Airlines permitted HALL to wear the Dansko Pro XP Clog during all four (4) phases of flight without any sort of medical certification, formal request for "reasonable accommodation," or other lengthy process. So did UNITED, from 2010 until 2013.

18.   Per UNITED'S Uniform Policy, flight attendants are permitted to wear clogs during Phases 2 and 3 of flight <u>even without doctor's certification of a disability and without the flight</u>

---

[3] In 2010, Continental Airlines merged with UNITED.  HALL continues to perform all of the same essential functions of her job at UNITED that she had performed for Continental Airlines.

attendant requesting an accommodation. In other words, a flight attendant is not required to provide UNITED with medical certification of a disability or request a "reasonable accommodation" in order to wear clogs while in flight. However, if the flight attendant wants/needs to wear the clog during Phase 1 or Phase 4 (i.e. when they walk to and from the plane), UNITED'S policy requires "medical documentation [to be] on file with base management. Shoes must be plain and black."

19.    UNITED'S Uniform Policy does not state or imply that flight attendants must obtain re-certification of their disability each year, nor does the policy suggest that flight attendants must request a reasonable accommodation for their disability each year. Nor would annual certifications or requests make any sense – especially in situations where, like HALL, the medical disability has been designated as "permanent" by the treating physician. Nevertheless, that is exactly what UNITED has required of HALL. Continental Airlines, on the other hand, never required HALL to furnish any sort of medical certification that she suffered from a permanent medical disability nor did Continental require that she make any sort of formal request for an accommodation. Rather, Continental simply asked that HALL bring a doctor's note after returning to work describing her condition and making a recommendation for use of the clog, which she did. In other words, Continental simply required some sort of "medical documentation [to be] on file" in order to wear the clog – which, ironically enough, is UNITED'S stated policy. Continental did not require annual re-certifications or requests thereafter.

20.    In August 2010, following years of conservative treatment for her foot condition, HALL underwent a surgical procedure to both her left and right feet in hopes of alleviating her chronic pain and angulation. Two months later, in October 2010, HALL underwent another surgical procedure to permanently fuse her first metatarsophalangeal joint on her right foot. A stainless-steel plate and screws were surgically installed inside her foot. On May 9, 2013,

HALL underwent another surgery to her feet in hopes of fixing her problem and alleviating some of the discomfort of her condition.  All this time, HALL continued to wear the Dansko Pro XP clog and perform all of her job duties.

21.     In August 2013, HALL's treating physician wrote her a note certifying (again) that HALL suffers from a "permanent condition" that prevents her from *ever* wearing any type of shoe other than the one that has been approved by his office, i.e. the Dansko Pro XP Clog.  On September 16, 2013, HALL'S treating physician signed a Work Release note confirming that she could return to her regular job without restrictions but that "she must wear Dansko XP Pro Clogs with a minimum of 4 ½ inch toe box."

22.     HALL returned to work soon thereafter.   However, instead of granting the accommodation that had been approved by Continental and UNITED both for the previous nine (9) years, UNITED forced HALL to participate in UNITED's Reasonable Accommodation Program ("RAP").

23.     As part of the RAP procedure, HALL had her treating surgeon explain in writing, using UNITED'S required forms, that HALL could perform at full duty all of the essential functions of her job, but that she had to wear rigid (stiff) soled shoes that have a box end and no heel in order to displace weight.  HALL's surgeon also wrote that HALL'S medical condition and impairment was "permanent" and that she had to wear the Dansko Pro XP Clog.

24.     Despite HALL's compliance with the RAP protocol, on or about August 7, 2013, HALL'S direct supervisor, Melinda Davis, emailed HALL to advise that she "cannot fly until the RAP is completed" and that Ms. Davis would "have to show [HALL] as RFD (removed from duty) until the [RAP] process is completed."   Thereafter, on or about October 10, 2013, UNITED'S Human Resource Manager, Tammy Holt, denied HALL'S requested accommodation by telling HALL that the Dansko Pro XP Clog was not in compliance with UNITED's uniform standards which she said prohibited such footwear coming to and from the plane (i.e. Phases 1

and 4), although it could be worn in flight (i.e. Phases 2 and 3).  HALL explained to Holt that she had tried several different types of shoes, but that she could not find another shoe that met her treating doctor's specifications.   Nevertheless, UNITED refused to grant HALL the accommodation and instead advised HALL that she had two weeks to find a shoe that complied with the UNITED standards. Two weeks later, on October 26, 2013, Melinda Davis again emailed HALL and told her that she had four (4) days, until October 30th, to find a shoe that met UNITED'S uniform guidelines or else HALL would "have to go on sick leave until you can provide a shoe that meets the uniform guidelines."

25.   Based on the foregoing, on or about November 7, 2013, HALL filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on the basis that UNITED had discriminated against her on behalf of her disability and denied the reasonable accommodation that had been ordered by her treating physician.

26.   Only after HALL filed a Charge of Discrimination with the EEOC did UNITED grant HALL the accommodation, but only temporarily.  UNITED rescinded the accommodation a few months later, claiming that it was unaware that HALL'S condition was "permanent" – despite HALL'S treating surgeon's written certification that her condition was indeed "permanent."

27.   After filing her Charge of Discrimination, UNITED sent HALL a letter dated August 19, 2015 stating that her Assessment of Functional Capabilities (AFC) had been rescinded and that UNITED took this to mean that she no longer needed an accommodation – despite the fact that HALL'S treating doctor had repeatedly certified her condition to be "permanent" and that the accommodation was required.  Moreover, HALL had sent UNITED a letter just three weeks earlier, on July 29, 2015, reiterating that her treating physician had deemed her medical condition to be "permanent" and that the Dansko XP Pro Clog was needed as a reasonable accommodation for her disability.

28.   On November 6, 2016, UNITED rescinded the accommodation for the third time claiming that HALL had failed to provide the necessary/required medical certification that she required the accommodation – despite the fact that she has furnished multiple written certifications from her treating surgeon that her disability and condition are "permanent" and that she must only wear the Dansko Pro XP Clog.

29.   HALL has to purchase at least one pair of Dansko Pro XP Clogs every year.  HALL has always paid for the cost of her clogs.  UNITED has never paid, nor offered to pay, for the cost of HALL'S clogs.  Moreover, HALL has paid for all of her medical examinations that UNITED required of her in order to obtain the certification from her treating physician that she is disabled and that the disability to her feet represents a "permanent" medical condition necessitating this accommodation.   UNITED has never paid a single penny for these medical costs, nor has UNITED even offered.

30.   Based on the foregoing, the EEOC issued a Determination Letter finding that UNITED had denied HALL a reasonable accommodation in violation of the ADAAA by withdrawing an accommodation previously granted and requiring HALL to request the same accommodation annually when HALL has provided medical certification that her disability is "permanent."

31.   HALL was discriminated against by UNITED on account of her permanent disability, denied reasonable accommodations by UNITED, and retaliated against for asserting her rights under the ADAAA.

32.   The reasonable accommodation requested by HALL (and as ordered by her treating physician) does not create any sort of undue hardship, burden, or expense on UNITED.  In fact, UNITED has not incurred any costs at all associated with the requested accommodation.  Rather, at the end of the day, UNITED has gone out of its way to deprive a very reasonable accommodation to Mrs. Hall, a loyal 32-year employee.

## VI.    FIRST CAUSE OF ACTION: ADAAA

33.    Plaintiff incorporates by reference the preceding paragraphs as if set forth herein.

34.    Defendant, United Airlines, Inc., is a "covered entity" under the ADAAA as defined by 42 U.S.C. § 12111(2) and is an "employer" as defined by § 12111(5)(A) because it engages in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

35.    Plaintiff, EDIE HALL, is a "qualified individual" under 42 U.S.C. § 12111(2) because: (i) she has a permanent disability to her feet, (ii) she is qualified for the flight attendant position at UNITED, and (iii) she has been subjected to adverse employment actions/decisions on account of her disability.    Moreover, HALL is an individual who, with or without reasonable accommodation, can perform the essential functions of her job as a flight attendant.

36.    UNITED, by and through its agents and employees, have intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by the ADAAA by discriminating against HALL on the basis of her disability.

37.    UNITED has also failed to provide HALL with a "reasonable accommodation" as that term is defined by § 12111(9) of the ADAAA.    HALL is a "qualified individual with a disability," (ii) HALL'S disability and consequential limitations were known by UNITED, and (iii) UNITED failed to make reasonable accommodations for HALL'S known limitations.  This despite the fact that doing so would not impose an "undue hardship" on UNITED and especially when considering the nature and cost of the accommodation needed, the overall financial resources of UNITED, and the type and nature of UNITED's operations.  Stated differently, it doesn't cost UNITED anything to permit HALL to wear a doctor-ordered clog when she is walking to and from the plane.

38.    Finally, UNITED retaliated against HALL in violation of 42. U.S.C.A. § 12203 by rescinding the accommodation previously granted to her after she opposed an act or practice

made unlawful by the ADAAA and also after learning that she had filed a Charge of Discrimination with the EEOC.  UNITED also retaliated against HALL by telling her that she could not return to work unless and until she provided redundant and unnecessary documentation from her treating physician on an annual basis – despite the uncontested fact that her doctor had previously and on numerous occasions advised that her medical condition was "permanent."

## VII.   DAMAGES

39.   As a direct and proximate result of the aforementioned arbitrary and capricious acts by UNITED, HALL has suffered economic loss, compensatory loss, and mental anguish – for which she seeks recovery.  In addition, HALL has been required to retain the services of Shellist Lazarz Slobin, LLP to represent her in this action.  Therefore, Plaintiff seeks the following relief: (1) past and future lost wages and benefits; (2) out-of-pocket expenses; (3) costs of court and attorney's fees; (4) past and future mental anguish and emotional distress damages; (5) compensatory damages; (6) liquidated damages and (7) all other damages to which she shows herself entitled, whether in equity or at law.  In addition, punitive damages should be assessed against Defendant so as to deter this type of conduct in the future.

## VIII.  JURY DEMAND

40.   Plaintiff hereby makes a request for a jury trial in this cause and has paid the required jury fee.

## IX.   PRAYER

41.   Plaintiff respectfully prays for the following relief:

    a.  Judgment against Defendant for actual damages sustained by Plaintiff as alleged herein;

    b.  General damages for the damage to Plaintiff caused by Defendant's violations of the ADAAA;

    c.  Pre-judgment interest at the highest legal rate;

    d.  Post-judgment interest at the highest legal rate until paid;

e.   Back pay;

f.   Front pay;

g.   Damages for emotional distress and mental anguish in the past and future;

h.   Liquidated damages;

i.   Exemplary damages;

j.   Attorneys' fees;

k.   All costs of court; and

l.   Such other and further relief, at law or in equity, general or special to which Plaintiff may show she is justly entitled.

Respectfully submitted,

SHELLIST LAZARZ SLOBIN LLP

*/s/ Robert R. Debes, Jr.*
ROBERT R. DEBES, JR.
Texas Bar No. 05626150
bdebes@eeoc.net
TODD SLOBIN
State Bar No. 24065947
tslobin@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 (main)
(713) 621-0993 (facsimile)

ATTORNEYS FOR PLAINTIFF